UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TYRA JOINER                                            CIVIL ACTION
O/B/O R.J.

VERSUS                                                 NUMBER: 14-1315

CAROLYN W. COLVIN, ACTING                              SECTION: "E"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. (Rec. docs. 11, 13).

On March 26, 2012, Tyra Joiner, mother of the minor child and Plaintiff-in-interest herein, R.J., filed an application for SSI benefits on the child's behalf, with a protective filing date of March 7, 2012, alleging disability as of January 1, 2011. (Tr. pp. 79-84, 85).[1/] In a "Disability Report-Child" form that appears in the administrative record below, Plaintiff's disabling conditions were identified as "[d]yslexia/adhd." (Tr. pp. 87-92). Plaintiff's application for SSI benefits was denied at the initial level of the Commissioner's administrative review process on May 16, 2012. (Tr. pp. 53-55). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") went forward on

---

[1/] A review of the administrative record provided by the Defendant indicates that Plaintiff had filed a previous application for Social Security benefits on July 5, 2011 that was denied at the initial level of the Commissioner's administrative review process on October 28, 2011. (Tr. pp. 45, 85).

March 11, 2013, at which Plaintiff and her mother, who elected to proceed without representation, appeared and testified. (Tr. pp. 56-58, 29-42). On April 2, 2013, the ALJ issued a written decision in which she concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 9-28). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on April 23, 2014, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-4). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c).

In her cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

> I.   The ALJ failed to properly evaluate and explain whether R.J. meets or medically equals a Listing.
>
> II.  The ALJ failed to fulfill her heightened duty to develop the record.
>
> III. Substantial evidence does not support the ALJ's finding that R.J. does not functionally equal the Listings.
>
> (Rec. doc. 11-1, pp. 11, 14, 17).

Relevant to the resolution of the foregoing issues are the following findings that were made by the ALJ:

> 1. The claimant was born on August 18, 2003. Therefore, she was a school-age child on March 7, 2012, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since March 7, 2012, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: borderline intellectual functioning; learning disorder; and attention deficit hyperactive disorder (ADHD)(20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The claimant has not been disabled, as defined in the Social Security Act, since March 7, 2012, the date the application was filed (20 CFR 416.924(a)).

(Tr. pp. 15, 25).

Judicial review of the commissioner's decision to deny SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor

3

may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 590, 592 (5th Cir. 1983). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant, whether a child or an adult, bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Fraga*, 810 F.2d at 1301; 20 C.F.R. §416.912(a). In making a disability determination on a child, the Commissioner undertakes the following three-step sequential analysis set forth in 20 C.F.R. §416.924:

1. determine whether the child engaged in substantial gainful activity during the relevant time frame and, if not;

2. determine whether the child has a medically determinable severe impairment and, if so;

3. determine whether the impairment meets, medically equals, or is functionally equal to an impairment set forth in the Listing of Impairments, Appendix 1, Subpart P, Part 404.

> *See Verrett v. Commissioner of Social Security*, No. 99-CV-3647 2001 WL 179922 at *1 n. 7 (E.D. La. Feb. 20, 2001)

In determining whether a child's impairment is functionally equivalent to one of those set forth in the Listing of Impairments, the Commissioner considers the child's limitations in the following six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and, health and physical well-being. 20 C.F.R. §416.926a(b)(1). To be functionally equal to a listing and thus of listing-level severity, the child must have "marked" limitations in two of the six domains or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(a). In evaluating a child's ability to function in each domain, the Commissioner is to consider: 1) the activities the child is able to perform; 2) the activities

the child is not able to perform; 3) which of the child's activities are limited or restricted compared to children of the same age who do not have impairments; 4) whether the child has difficulty with activities at home, in childcare, at school, or in the community; 5) whether the child has difficulty independently initiating, sustaining, or completing activities; and, 6) what kind of help the child needs to do activities, how much, and how often. 20 C.F.R. §416.926a(b)(2); *Maps ex rel. M.J. v. Astrue*, 09-CV-2226, 2010 WL 1946662 at *8 (N.D. Tex. Apr. 30, 2010), *adopted*, 2010 WL 1948363 (N.D. Tex. May 13, 2010).

The documentary evidence that appears in the administrative record below begins with the report of a consultative psychological evaluation that was performed by Dr. Carlos Kronberger on October 12, 2011.[2/] Plaintiff was eight years old at the time, was enrolled in the third grade, and had begun receiving "504 accommodations" that school year. The presenting condition was identified as dyslexia. Plaintiff's mother reported that Plaintiff sometimes got depressed and cried but had no answer when asked why. She also reported that Plaintiff was known to "stare in a daze" since the age of two, adding that Plaintiff had been ". . . conceived while her father was on drugs." No seizures, head injuries, or loss of consciousness were reported, Plaintiff had received no mental health treatment, and was on no prescribed medication. In terms of academic performance, Ms. Joiner advised the doctor that school officials wanted to hold Plaintiff back a school year but that she was against it. A recent onset of unspecified behavioral problems was also reported but Plaintiff had not been suspended from school. Psychiatric problems were "all through the

---

[2/] Given its date, this evaluation actually appears to have been performed in connection with Plaintiff's previous application for Social Security benefits. (*See* note 1, *supra*).

family," Plaintiff's father had been in and out of prison, and Ms. Joiner related suffering from ". . . a touch of dyslexia" herself.

In terms of adaptive skills, Plaintiff could wash and dry her hands and face and could dress herself but sometimes needed help with putting on pants and with buttons. She could not tie her shoes properly. Plaintiff could eat with a fork and a spoon and knew how to pour drinks into a cup but was unable to keep still at the dinner table. She had learned how to ride a bike, could clean her room with reminders, and could get along with other children except her brother and sister. Plaintiff's speech was intelligible but sometimes inaudible and expressive language skills were fair. She was observed to manipulate a pencil with two hands. Plaintiff did not maintain consistent eye contact and rapport was not adequately established. Dr. Kronberger found Plaintiff to be moderately inattentive on tasks, squirming in her seat and being fidgety. Several questions had to be repeated, Plaintiff did not exert herself much with tasks, and she complained about the assessment's length. Her ability to follow directions was fair, prompting was required for her to stay on track, motivation was uneven, and psychomotor pace varied.

When queried, Plaintiff was an accurate historian of personal information and had a reasonable fund of basic information for her age, but answered a number of math, picture-vocabulary, and social-comprehension questions incorrectly, causing the doctor to question whether she was truly exerting herself. Plaintiff expressed no fear about school and denied being bullied or being in trouble. Upon being administered the WISC-IV intelligence test, Plaintiff achieved a verbal comprehension score of 65, a perceptual reason score of 55, a working memory score of 62, a processing speed score of 75, and a full scale I.Q. score of 56. However, Dr. Kronberger did not feel that the test results were valid as

Plaintiff did not apply herself consistently on task, had missed a number of entry-level items, and had provided inconsistent responses.

In conclusion, Dr. Kronberger remarked that "[t]he current assessment revealed that R[ ] was inadequately motivated and resistant," ". . . appear[ing] to be equivocal during the Mental Status Examination, as well." Even when encouraged, there was no change in her demeanor and she ". . . appeared to be engaging in self-sabotage." Plaintiff's WISC-IV scores were lower than expected in light of the available school documentation, but she was seemingly able to understand directions, speech was intelligible, and expressive language skills were fair. Although she was inattentive on tasks, lack of effort compounded her difficulties and she complained about the testing. There was no evidence of gross psychopathology and Plaintiff's adaptive skills were close to age-expected levels except in areas affected by attentional and learning deficits. The diagnosis was as follows: Axis I – ADHD, combined type; learning disorder, not otherwise specified; and, rule out oppositional defiant disorder; Axis II – rule out borderline intellectual functioning; Axis III – none; Axis IV – father incarcerated, learning problems; and, Axis V – a GAF score of 58. The prognosis was fair. (Tr. pp. 174-178).

On December 14, 2011, Plaintiff underwent a psychiatric evaluation by Michael Santone, APRN-BC. Plaintiff's mother reported that she was depressed, cried daily, and was impulsive, with the depression first manifesting itself at age three. Inappropriate conduct included tantrums, hitting walls, yelling, screaming, kicking, difficulty falling asleep, and bed-wetting. At the time, Plaintiff was in the third grade at Wilson Charter School, where she was receiving D's and F's. Ms. Joiner had not received any calls from teachers regarding Plaintiff's academic performance and there were no major behavioral issues. It was noted

that Plaintiff was shy but had friends and was a cheerleader. Attention span was characterized as poor and distracted and mood was happy although Plaintiff did admit to daily crying spells. Affect was blunted, thought processes were goal-directed, memory was intact, and intellectual functioning was age appropriate, but judgment was poor. Other notable behaviors were interruptions, fidgetiness, poor grades, being hyper-emotional, poor sleep, difficulty with homework, and increased anxiety. The diagnosis was: Axis I – ADHD, depressive disorder, rule out generalized anxiety disorder; Axis II – deferred; Axis III – none; Axis IV – poor grades; and, Axis V – a GAF score of "50/?" The prognosis was listed as fair and Plaintiff was prescribed Vyvanse. (Tr. pp. 183-188). Various tests were ordered. (Tr. p. 192).

In a progress note of February 1, 2012, it was reported that Ms. Joiner had stopped giving Plaintiff her medication after one dose as a result of Plaintiff experiencing a loss of appetite, nausea at night, and crying. The assessment was ADHD and Ms. Joiner was encouraged to re-start Plaintiff on her medication with a slight dosing modification. (Tr. p. 190). By March 7, 2012, Plaintiff's grades at school had improved, she was experiencing no side-effects, and eating, sleeping, and behavior patterns were all steady. Ms. Joiner was pleased with Plaintiff's overall improvement. The assessment was unchanged and Plaintiff was maintained on Vyvanse. (Tr. p. 189).

On April 20, 2012, Ms. Joiner completed the Administration's "Function Report-Child" form that was designed to elicit information on Plaintiff's capabilities. There, Ms. Joiner checked off the appropriate boxes on the form to indicate that Plaintiff had no problems seeing or hearing and was able to talk but had various communication limitations including being unable to deliver telephone messages, to repeat stories that she had heard,

8

to explain why she had done something, or to talk with family or friends, all attributable to Plaintiff getting aggravated quickly or daydreaming. Learning progress was also limited such that Plaintiff could not read simple words or sentences, write in longhand, spell most three to four-letter words, add and subtract numbers over 10, make correct change, or tell the time. Ms. Joiner explained that Plaintiff was prone to getting frustrated, was forgetful, and was unable to stay on task, describing her as overactive. She could not skate or rollerblade, swim, use scissors, or work video game controls. Plaintiff was also unable to get along with other adults or school teachers, getting into arguments and physical altercations most of the time with family and friends. Personal-need limitations included being unable to button clothes, to bathe/shower without help, to brush her teeth, to comb/brush her hair, to help around the house, to follow instructions, to obey safety rules, or to get to school on time. Concentration and attention were limited on all fronts and Plaintiff became easily frustrated when taking on new tasks. Ms. Joiner described Plaintiff's behavior as largely inconsistent and unpredictable, with her being unable to slow down on some days and crying all day on others, even wetting the bed at times. (Tr. pp. 107-116, 118-127).

On April 30, 2012, Plaintiff's third-grade teacher at the Wilson Charter School, Ms. Rasheeda Henry, completed a "Teacher Questionnaire" and reported on Plaintiff's in-school performance. At that time, Plaintiff was receiving various in-school accommodations, including increased completion time, small group administration, preferential seating, and visual cues and markers. Even with those accommodations, out of the 10 enumerated school activities in the domain of acquiring and using information, Plaintiff was said to have a "very serious" in three of the activities, a "serious problem" with four of the activities, and

9

an "obvious problem" with the three others.  In the domain of attending and completing tasks, Plaintiff had a very serious problem in eight of the 13 listed activities and a serious problem in three others, with the problems occurring sometimes hourly.  Problem ratings and frequency were somewhat less in the domain of interacting and relating with others and behavior modification strategies included moving Plaintiff from the classroom to the "intervention room."  There were no noted deficits in the domains of moving about and manipulating objects or in Plaintiff caring for herself.  According to Ms. Henry, Plaintiff was on no medication at the time.  In her closing remarks, Ms. Henry commented that Plaintiff had trouble focusing in class and that directions had to be repeated numerous times for her. (Tr. pp. 129-136).

On May 15, 2012, an Administration examiner made a formal request for a review of Plaintiff's file by a specialist in the field of mental impairments, including an assessment of Plaintiff's residual functional capacity.  That request was made in connection with the initial consideration of Plaintiff's application for SSI benefits.  There, the examiner noted that "[a]lthough in CE report it states that claimant wasn't cooperate (sic), current TQ on file matches the findings on the report." (Tr. p. 195).  The requested review was conducted by Dr. Lisette Constantin on May 16, 2012.  (Tr. p. 196).  After reviewing Plaintiff's file as it was then extant, Dr. Constantin indicated that Plaintiff suffered from severe impairments in the form of borderline intellectual functioning, a learning disorder, ADHD, and a mood disorder but that those impairments did not meet, medically equal, or functionally equal any condition set forth in the Listing of Impairments.  In evaluating Plaintiff's functionality in the six §416.926a(a) domains, Dr. Constantin found that Plaintiff had a marked impairment in attending and completing tasks; a less than marked impairment in acquiring

and using information, interacting and relating with others, and in caring for herself; and had no limitation in moving about or manipulating objects or in health and physical well-being.  On that basis, Plaintiff's application for SSI benefits was denied at the initial level. (Tr. pp. 44-52).

The administrative record below also contains a "Questionnaire for Children Claiming SSI Benefits" form that was completed by Ms. Joiner at some time subsequent to May 20, 2012.  In addition to receiving special accommodations at school, Plaintiff was also seeing a caseworker with Integrated Family Services, LLC ("IFS") in an attempt to address her deficiencies.  Although the prescribed Vyvanse did have several side effects, Ms. Joiner reported that Plaintiff focused much better on the medication, with no ". . . flipping or jumping around everyway . . ."  (Tr. pp. 144-151).  Personnel from IFS updated Plaintiff's Individualized Service Recovery Plan ("ISRP") for the period ending September 1, 2012, identifying certain goals and the strategies and services that were available to address and accomplish them.  Of the four identified areas of need, Plaintiff had met the goals established for two and had made progress in the other two.  (Tr. pp. 197-205).

On November 1, 2012, Plaintiff's Individualized Accommodation Plan ("IAP") was updated by officials at the Wilson Charter School.  Plaintiff's disabilities were identified as ADD/ADHD and an academic/learning disability manifested by deficiencies in various areas of study.  Continued accommodations were needed in math, reading, composition, English, spelling, science, and social studies, including preferential seating, teacher proximity, small groups, assignments/tests read aloud, increased time allowed, behavior reinforcement, prior notice of tests, and use of a calculator.  Saturday LEAP tutoring and math intervention were also to be scheduled. (Tr. pp. 163-166).

As noted earlier, a hearing *de novo* before an ALJ went forward on March 11, 2013. Plaintiff and her mother appeared at the hearing and elected to proceed without counsel. After the documentary exhibits were formally admitted into evidence, Ms. Joiner took the stand and was questioned by the ALJ. Plaintiff was in the fourth grade at the time and thus far had not been held back for any grade. Ms. Joiner expressed a desire to see Plaintiff involved in more activities at school above and beyond her participation in the 504 accommodation program since the start of the third school year. Commencing with the start of the fourth grade, Ms. Joiner had seen an improvement in Plaintiff's grades as well as a willingness and ability to do her homework on her own. However, thus far in the spring semester Plaintiff's grades had taken a dip, with her earning two F's. Aside from academics, Plaintiff was also hyperactive and was known to "flip" or dance at school at inappropriate times and to engage in such conduct at home as well. Although Ms. Joiner acknowledged that Vyvanse was helpful and had a calming effect, Plaintiff would still do cartwheels and would fight her brothers and sisters and had even been involved in a fight at school the previous year which resulted in her being suspended. Ms. Joiner then referenced additional school records in which Plaintiff had tested positive for being dyslexic. Plaintiff took ADHD medication that had been prescribed by her psychologist and, more recently, Intuniv, which had helped with the crying. (Tr. pp. 31-38).

Plaintiff then took the stand and was questioned by the ALJ. She testified that her teacher at the time was Ms. Hamilton and her favorite class was language with science being the most challenging and had thus resulted in her earning an "F." Plaintiff testified that she received assistance at school "sometimes" which helped "a little." Weekday evenings were supposedly devoted to homework and Plaintiff enjoyed riding her bike on

12

weekends.  When taking her medications, Plaintiff felt that she performed better at school.  (Tr. pp. 39-41).

The ALJ issued her written decision denying Plaintiff's application for SSI benefits on April 2, 2013.  (Tr. pp. 9-28).  On October 21, 2013, school officials updated Plaintiff's IAP to continue the accommodations that had previously been put in place in an effort to maximize her performance.  Based upon review of this IAP, it appears that Plaintiff had been held back in the fourth grade for the 2013-2014 school year.  (Tr. pp. 207-210).  On April 23, 2014, the AC formally denied Plaintiff's request for review of the ALJ's decision.  (Tr. pp. 1-4).  In doing so, the AC indicated that it had considered the updated IAP dated October 21, 2013.  (Tr. pp. 2, 4).

As noted above, Plaintiff challenges the ALJ's decision to deny SSI benefits on three grounds.  First, she contends that the ALJ failed to properly evaluate and thereafter explain whether her condition met or equaled the criteria of one of those set forth in the Listing of Impairments.  Second, Plaintiff argues that the ALJ failed to fulfill her heightened duty to develop the record given that she and her mother were unrepresented.  Third, Plaintiff asserts that substantial evidence does not support the ALJ's finding that her condition did not functionally equal the criteria of one of those set forth in the Listing of Impairments.

The Court believes that the cumulative effect of those challenges casts doubt on whether the Commissioner's decision is adequately supported by substantial evidence.  For the reasons that follow, then, it will be recommended that Plaintiff's case be remanded to the Social Security Administration for further development of the record, including review of materials that post-date the ALJ's decision.

In her written decision on April 2, 2013, the ALJ accorded "great weight" to the opinions of the non-examining State agency psychological consultant, Dr. Constantin, in adjudicating Plaintiff's application for SSI benefits. (Tr. p. 19). The Court recalls that Dr. Constantin performed her initial level review on May 16, 2012 and found that Plaintiff was not disabled based upon four pieces of documentary evidence: the October 12, 2011 consultative psychological report of Dr. Kronberger; the December 14, 2011 "Psychiatric Evaluation" report of Michael Santone, APRN-BC; the Function Report that had been completed by Ms. Joiner on April 20, 2012; and, the Teacher Questionnaire that had been completed by Ms. Henry on April 30, 2012. (Tr. pp. 47-48). In rendering his report, Dr. Kronberger had, in turn, reviewed a June 12, 2011 report card from Langston Hughes Academy, an undated teacher questionnaire, and portions of a Section 504 accommodation plan dated May 4, 2011. (Tr. p. 174). That documentation, however, is not included in the administrative record below. In addition, Dr. Kronberger's report was technically issued outside of the time period that is relevant to this case as it was dated prior to the initial denial of Plaintiff's previous application for SSI benefits on October 28, 2011, a time period which is *res judicata* as between the parties. *Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S.Ct. 980, 985-86 (1977); *Muse v. Sullivan*, 925 F.2d 785, 787 n. 1 (5th Cir. 1991). Despite his belief that Plaintiff's IQ scores were invalid, Dr. Kronberger nevertheless assessed Plaintiff as having a GAF of 58 which is indicative of an individual who is experiencing moderate difficulty in social, occupational, or school functioning. *See Owen v. Colvin*, No. 12-CV-1179, 2013 WL 4782814 at *6 (W.D. La. Sept. 6, 2013). "Significant weight" was given to Dr. Kronberger's opinions by the ALJ. (Tr. p. 19).

In addition to Dr. Kronberger's consultative evaluation report, Dr. Constantin also considered the report of a "Psychiatric Evaluation" that was performed by Michael Santone, APRN-BC, on December 14, 2011, a report that was ultimately accorded "some weight" by the ALJ. (Tr. p. 19). However, as an Advance Practice Registered Nurse-Board Certificated – rather than a physician or psychologist – Mr. Santone is not an "acceptable medical source" who can properly opine on the severity of Plaintiff's impairments and how they affect her functional ability. *Harvey v. Astrue*, No. 12-CV-2267, 2013 WL 2244282 at *8 (E.D. La. May 21, 2013); *see also Guidry o/b/o C.N.H. v. Colvin*, No. 12-CV-3150, 2014 WL 4369647 at *9 (W.D. La. Sept. 1, 2014). That fact notwithstanding, in his report Mr. Santone noted that Plaintiff was prone to engaging in inappropriate and sometimes violent behaviors and was earning D's and F's in school. A GAF of 50 appears to have been assessed, which denotes a serious impairment in social, occupational, or school functioning. *Owen*, 2013 WL 4782814 at *7 n. 7.

The foregoing issues aside, relying on the reports of Dr. Kronberger and Mr. Santone, the Function Report of Ms. Joiner, and the Teacher Questionnaire of Ms. Henry, Dr. Constantin assessed Plaintiff as having a marked impairment in the domain of attending and completing tasks. (Tr. p. 49). In reaching that conclusion, the doctor cited the Teacher Questionnaire as evidence that Plaintiff had significant problems in the identified domain, including trouble refocusing and carrying out single-step instructions. (*Id.*). Of the 13 enumerated activities in the domain of attending and completing tasks, Ms. Henry had found that Plaintiff had a "very serious problem" in eight of them, which occurred on an hourly basis. (Tr. p. 131).

Despite these fairly significant observations from someone who supervised Plaintiff for two hours per day in a structured setting over the previous 10 months, and despite stating that she gave "great weight" to Dr. Constantin's findings, the ALJ ultimately found that Plaintiff had a less than marked limitation in the domain of attending and completing tasks "[d]ue to evidence of improvement." (Tr. p. 21). That evidence consists of a March 7, 2012 IFS progress report from Mr. Santone documenting Ms. Joiner's report of improved grades and steady eating, sleeping, and behavior patterns after starting on Vyvanse; the Questionnaire that Ms. Joiner completed around May of 2012 in which she reported that, with medication, Plaintiff was more focused and was no longer "flipping or jumping around"; the September 1, 2012 update to Plaintiff's ISRP wherein it was noted that some previously-established goals had been met; and Ms. Joiner's hearing testimony to the effect that medication had improved Plaintiff's symptoms, making her more calm, and that a recently-added medication had helped with her crying spells.

While the record considered by the ALJ does reflect some improvement to Plaintiff's symptomology after starting on Vyvanse, that improvement must be tempered when measured against the performance that she exhibited during the spring 2012 semester, having a very serious problem in over 60% of the qualifying activities in the domain of attending and completing tasks and the same deficit in 30% of the enumerated activities in acquiring and using information. A fair reading of Ms. Joiner's hearing testimony also establishes that, although some short-term improvement was seen immediately after Plaintiff began taking Vyvanse, her grades declined and her hyperactive behaviors later returned, including fighting with siblings and others and possibly a suspension the previous school year. Unfortunately, that decline appears to have continued, given that

16

Plaintiff was apparently held back in the fourth school year despite the accommodations that had been made for her.[3] The very need for such accommodations in the first place is strongly suggestive of a marked impairment in the domain of attending and completing tasks. *Perkins v. Astrue*, 32 F.Supp. 3d 334, 342 (N.D. N.Y. 2012). Here, Plaintiff was held back <u>despite</u> those accommodations, a fact of which the ALJ was apparently unaware.

While the ALJ may not have had the benefit of Plaintiff's Fall 2013 school records, the Court is charged with determining whether the Commissioner's decision is supported by substantial evidence based on the record as a whole, including the evidence that was submitted for the first time to the AC. *Higginbotham v. Barnhart*, 163 Fed.Appx. 279, 281 (5th Cir. 2006). In this Court's view, that complete record demonstrates serious problems in the domain of attending and completing tasks. Moreover, portions of the record not available to the ALJ seriously diminish the weight of the evidence concerning Plaintiff's "improvement" that apparently led the ALJ to disregard Dr. Constantin's opinion regarding Plaintiff's marked impairment in that domain. Finally, such obvious shortcomings in the domain of attending and completing tasks may also have a concomitant effect in the domain of acquiring and using information. *See* Social Security Ruling ("SSR") 09-4p, 2009 WL 396033 at *3-4.

Stripped to essentials, the ALJ essentially adjudicated Plaintiff's application for SSI benefits based on Ms. Joiner's Function Report, Ms. Henry's Teacher Questionnaire, and the testimony that was adduced at the administrative hearing, without the benefit of consultative psychological findings that were made during the relevant time period, opinions from an appropriate medical source other than Mr. Santone, or Plaintiff's recent

---

[3] This was after it had been previously recommended that Plaintiff be held back after completing the third school year, which Plaintiff's mother would not allow. (Tr. 17, 174).

17

records from the 2013-2014 school year (and the ALJ, while stating that she gave "great weight" to Dr. Constantin's opinion regarding Plaintiff's marked impairment in the domain of attending and completing tasks, disregarded that opinion). The Court's concerns over the thoroughness and quality of the evidence relied upon by the ALJ take on added significance given that Plaintiff and Ms. Joiner were unrepresented by counsel. *See Kane v. Heckler*, 731 F.2d 1216, 1220-21 (5th Cir. 1984). For these reasons, it will be recommended that Plaintiff's case be remanded to the Commissioner for further development of the record and consideration of the additional evidence presented for the first time to the AC.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's case be remanded to the Commissioner for further proceedings consistent with the Court's opinion.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 27th day of July, 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE